# WEST JERSEY TITLE AND GUARANTY COMPANY

## *v.*

## ROBERT L. BARBER.

1. A corporation duly organized under the tenth section of the act concerning corporations, as amended by the act of February 29th, 1888 (*P. L. of 1888 p. 112*), is entitled to the same right of access to, and examination of, the public records of the county as an individual would be.

. 2. When *employed to examine the title to* any particular piece of property, such corporation is subrogated to the right of its employer to have such access, and the fact that it contemplates making a contract of guaranty of the title to the land in question does not detract from such right of access.

---

On order to show cause why an injunction should not issue. Heard on bill and answer.

*Mr. Samuel H. Grey* and *Mr. Thomas E. French*, for the complainant.

*Mr. David J. Pancoast*, for the defendant.

PITNEY, V. C.

The complainant is a corporation organized under the tenth section of the act concerning corporations, as amended by act of February 29th, 1888 (*P. L. of 1888 p. 112*). Its object is intimated by its title, and is set forth in the certificate of incorporation as follows:

"The examination, insurance and guaranty of the title to lands and estates, or interests in lands in the several counties of the State of New Jersey and issuing of certificates, policies, contracts and undertakings therefor upon such terms and conditions, restrictions and limitations as may be determined by said company, and to acquire title to and to sell any lands or interest therein in respect to which said company has made any contracts of guaranty; the guaranty of bonds, mortgages and other securities, to act as agent to negotiate, purchase and sell bonds, mortgages and other securities, or, in its own behalf, to purchase and to sell the same, and as agent to buy, sell, exchange, let, lease and manage real estate and collect the rents, issues and profits arising therefrom; and, also, as agent to effect and maintain insurances against loss or damage by fire or other casualties to buildings or other properties."

Its place of business is in the city of Camden.

The defendant is the clerk of the county of Camden, and the object of the bill is to enjoin the clerk from preventing the employes of the complainant from having access to the public records and papers in his office when they have occasion to examine the same for the purposes of the business of the corporation.

The bill and affidavit shows that the company was organized in 1888, and has been in active business ever since; that at the beginning of the present year they had issued one thousand seven hundred and fifty contracts of insurance guarantying titles of land and fourteen certificates of the examination of the title to land; and it alleges that in order to carry on its business it is necessary for it to enter into contracts with relation to the *status* of the titles of land, in Camden and other counties, and in order to do so with safety it is necessary for it, by its agents, to have, during every business day, access to the records of the office of the clerk of the county for the purpose of looking for judgments, mechanics' liens, attachments, recognizances, docketed judgments, sheriffs' bonds and other public records affecting the

title to lands or forming encumbrances or liens upon lands, and it asserts that it has the right, as a citizen of the state, to have such access for the purpose of examination and inspection at all proper times of every business day, subject to such proper and reasonable rules and regulations of the clerk having the custody of such records as are necessary for their protection and preservation ; and it alleges that in exercising its privilege of examining the records in the defendant's office it has, in all respects, conformed to the rules and regulations of the office, and that it has not, at any time, or in any way, interfered with its use by the defendant or others interested therein.

The bill further sets out that objections had been made by the defendant from time to time, within about eight months previous to the filing of the bill, to the use of the records in his office by the searcher employed by the complainant, and that finally, on the 7th of March, 1892, said defendant refused to permit complainant's searcher to make any search or examination of the books and papers in his office unless he would first specify what particular books, and against what particular names, he wished to search ; and that on the 8th of March said searcher went, by order of the complainant, to the clerk's office for the purpose of making an examination of records and files of the office for the purpose of its business, and on that occasion gave to the defendant the names of the persons he wished to search against, and a list of the books he wished to examine, and the clerk replied to the said searcher that as a representative of the complainant he refused him access to the records ; and that the complainant is absolutely prevented from obtaining access to the books and records and files in the office of the clerk in the custody of the defendant, and is thereby unable to carry on its business.

The defendant, by his answer, admits the organization of the company, and that it is doing the business set forth in its bill, and makes this denial :

"And he denies that the said company has conformed to all the rules and regulations of his said office in its use of the same and the records thereof; and he denies that the said company has not, in any way or at any time, interfered with the use by this defendant, or others interested therein, of the said public records, as alleged in paragraph 4 of said bill,"

West Jersey Title and Guaranty Co. *v.* Barber.

which is in precisely the same language used in the allegation in that behalf in the bill, and does not set out what particular rule or rules of the office the complainant has failed to conform to, or in what particulars, or in what way, he has at any time interfered with the defendant or other persons in the use of the records. Such denial is of no value.

The real defence set up in the answer is as follows,. viz.: That an important part of the business of the complainant consists in making and giving, for a consideration, certificates of searches to its customers in respect to titles of land and liens thereon such as the defendant has been, and is accustomed to give, upon payment of the fees prescribed by law, and that, to a very great extent,. the business of the company is one of the same character and in opposition and rivalry to that done by the defendant in his official capacity, and that, in the conduct of such rival business, it has been the custom of the said company to send its clerks and agents to the office of the defendant continuously, at almost all hours of the day, from the time his office is open in the morning until it is closed in the afternoon, and that it practically makes the defendant's official office the office and place of business of the said company from which to do a rival business with the defendant, to his great injury and detriment, by the diminution of the official patronage naturally and properly belonging to the office ; and he denies the right and power of the company to do so ; and for the purposes of protecting himself against the great inconvenience caused to him in the conduct of the official business, and the duties of his office, by the continual presence and labor of the clerk and agents of the company, in the conduct of its business, in and about the defendant's office, and the loss of patronage caused him thereby, he has denied the representatives of the company the right to so use his said office and the records thereof by way of opposition to him as aforesaid, but not otherwise ; and he insists, as a matter of law and equity, that the said company has no such unlimited and unrestricted right to the use of his said office and the records thereof, to his inconvenience,. detriment and damage aforesaid ; and he further submits that the complainant has no equity, and that his remedy, if any, is at law..

The answer is sworn to in these words: "Robert L. Barber, being duly sworn, on his oath says that the matters and facts set forth in the above answer are true."

This defence is substantially two-fold—*first*, that the complainant is making use of the office in an unreasonable manner and to an unreasonable extent; and, *second*, that he is doing so in such a manner as to diminish the fees and emoluments of the defendant's office.

I do not think the allegations of the answer, with regard to the first branch of this defence, sufficiently specific and circumstantial to avail the defendant on this motion. Should I come to the conclusion that an injunction should go, the terms of it may be such as to prevent any abuse by the complainant of the right, if that shall be established, to make use of the records of the office without paying fees.

The defence actually relied upon, however, at the argument, was that the complainant is interfering with and diminishing the emoluments of the defendant's office, and the defendant further insisted that complainant's remedy was by a *mandamus* and not by an injunction.

With regard to the remedy by *mandamus*, it seems to me that the slightest consideration will show that it is entirely inadequate. If the complainant has the right which it claims, to have access to the books and records in defendant's office, it is one which, from the nature of the business, is a continuing one, and may arise every day, and one which, to be of any value, must be exercised at once; to delay its exercise until it could be determined by a court of law would be simply to deny it, because, before the judgment could be obtained, the value of its exercise in the particular instance complained of would be lost. If, indeed, the right of the complainant here in question is not so clearly established at law as to warrant the interference of this court by the strong arm of an injunction, that alone is a sufficient answer to the complainant's case, and complainant will be, as a matter of course, turned over to a court of law to establish there its right by a test case; but when that is once established, it would be a denial of justice to say that in every instance that it

West Jersey Title and Guaranty Co. v. Barber.

·desired to exercise the right already clearly established, it must resort to its legal remedy, and can have no help from this court.

If, then, the complainant's right is clear at law, and not open ·to question, it seems to me that it is entitled to the aid of this ·court to enjoin the defendant from preventing its exercise.

The right of each member of the public who has occasion to -examine the public records of the county to do so by his agent ·and attorney, without paying any fee or reward to the clerk, was ·established by the unanimous opinion of the court of errors and ·appeals, in *Lum* v. *McCarty, 10 Vr. 287*. That was a test case, and every particle of legislation which could possibly be con-·strued to give the clerk the power to charge fees for work which he did not actually do, or to exclude any person from access to -and examination of the public records, was considered by the ·court. The opinion calls attention to the distinction between the ·records of conveyances and mortgages, which are specially de-·clared to be public records to which every person shall have ·access at all proper seasons, and may search the same, paying the ·fees allowed by law, and the case of the records of judgments of ·the county courts, which are not in so many words declared by ·the statute to be public records and open to the examination of ·all persons. These records of judgments, mechanics' liens, and the like, are those in question here, there being in Camden county -an office for the recording of conveyances and mortgages not in ·the custody of the defendant, but in that of the register of deeds for that county.

Speaking of the records of judgments Chancellor Runyon, in his opinion in *Lum* v. *McCarty, 10 Vr. 289, 290*, says: "Nor ·can a claim on the part of the clerk to fees for a search not made by himself, or his assistants, in the records of the judgments of ·the circuit court in his office, be justified by the fact that no ·special provision is made for access by the public to those rec-·ords. They are no less free to the public by reason of the ·absence of a provision declaring the right. They are, in fact, ·public records, and are public property, kept in a public place, at the public expense, for the public benefit. For the convenience ·of the public in examining them, the law provides for the making

of proper indexes of their contents. The law expressly provides for free access, by the public, to the records of attachments, notices of *lis pendens*, circuit court judgments docketed in the supreme court, and judgments of justices' courts docketed in the courts of common pleas. In respect to mechanics' lien claims, it provides that the clerk shall provide a lien docket, at the expense of the county, and shall make a proper index thereto, and that he shall have six cents for every search in the office for such lien. The searches for which compensation is thus provided are those which may be made by himself or his assistants. That the various records under consideration are intended for use by the public, by way of reference and examination, is all the more manifest from the care with which the facilities for such reference and examination are provided. * * * The clerk is the lawful custodian of the records and indexes thereto, and is responsible for the safe-keeping thereof. His powers over them are such as are necessary for their protection and preservation. To that end he may make and enforce proper regulations consistent with the public right for the use of them. But they are public property, for public use, and he has no lawful authority to exclude any of the public from access to, and inspection and examination thereof, at proper seasons, and on proper application. * * * He has no exclusive right to search the records."

This doctrine was not seriously attacked at the argument, as, indeed, it could not be, but a distinction was attempted to be drawn between an ordinary member of the public who has occasion on his own individual account to examine the records and one who makes a business of doing it for a profit, as does the complainant here. I am unable to discover any such distinction. The person who made the search in *Lum* v. *McCarty* was the attorney of the plaintiff, Lum, and it was held that Lum might recover back money paid under protest as fees by the attorney to the clerk for a search made by the attorney; and I can see no reason why the same rule does not apply to the case of an individual who should undertake to make an examination of the title of a certain piece of land for another person and enter into a contract to guaranty that the title is perfect. It was not, and can--

not be, contended that such a contract is not lawful; that there is anything in it contrary to public policy. The legislature has especially authorized it. But the precise point taken was, that the person who in such case undertakes to examine the title and guaranty it does not occupy the position of a citizen who has occasion to examine the records, as did Mr. Lum in *Lum* v. *Mc-Carty.* The answer to this is, that for the purpose of making the examination in the supposed case the examiner and guarantor is, for the purposes of a particular examination, subrogated to the rights of the party for whom he is making the examination and with whom he proposes to make the contract of guaranty, and whose right to make it in person is admitted. Notwithstanding the proposed contract of guaranty, the examiner is still examining the title for, and on the retainer of, the other party to the transaction in substantially the same manner as he would do in the absence of a contract of guaranty. The real occasion and necessity for the examination of the records for the purpose of ascertaining the true state of the title and the existence or non-existence of liens and encumbrances upon it is not done away with by the mere fact that one party proposes, upon the strength of that examination, to guaranty to the other that the title is in a particular condition.

I am unable to see any difference between the position of the complainant and that of any individual—for instance, a counselor at law—in regard to its rights to make searches in the clerk's office. The defendant, however, claims that such distinction exists. His counsel, in his argument, says that "the complainant claims the right to the constant daily and hourly use of the defendant's office as a means of furthering a business in opposition to and rivalry with the business of the defendant, the effect of which, necessarily, is to deprive him of a large fraction of the emoluments of his office in the form of search fees. The law casts upon the clerk the duty and the responsibility of keeping the records of his office for the benefit of the public generally, and as a reward for the performance of his duties, it gave him the right to take certain fees for researches which his position enables him to make with considerable profit. Now, can it be

31

West Jersey Title and Guaranty Co. v. Barber.

that a corporation established in the business of making such searches for others for profit can carry it on in the clerk's own office to his direct injury? Can it say to its customers ' the clerk is entitled by law to so much for searches, but we will send our agent into his office and make the same searches from his books for half-price?' If so, the company has it in its power to deprive the clerk of the patronage and fees which the law intended him to have as compensation for his official services."

Now, I see nothing in that argument, which was pressed with great earnestness, that is not covered by the principle established in *Lum* v. *McCarty*, where the work was done by an attorney at law. Moreover, I think it involves a complete misunderstanding of the duties, functions and responsibilities of the defendant and of the other custodian of the county records—the county register. It is no part of the business or duty of either of those gentlemen to do the most important part of the work which the complainant undertakes to do. Their duty is simply to search for and ascertain the existence or non-existence, in their respective offices, of certain records and documents in the nature of records, upon data or clews first furnished them. It is no part of their duty to determine and give an opinion upon the character and effect of such records. If either should assume to perform this function and should make a mistake therein, neither the officer nor his sureties could be held liable for damages resulting from the error.

The restricted character of the duties of these officers is illustrated by the case of *Ballinger* v. *Deacon, 15 Vr. 559.* The learned judge there, speaking for the supreme court (at *p. 563*), says: " The clerk, when he is called upon to make a search, is entitled to have such information, either by the names of parties or by reference to the records in his office, as will enable him, by examining the indices or the record to which he is referred, to ascertain the premises in relation to which he is required to make a search. A party desiring a search cannot carve out a description of lands at his will, and require the services of the clerk to ascertain the condition of the title. He must furnish the clerk with such information, as to the state of the title, as

West Jersey Title and Guaranty Co. *v.* Barber.

will enable him to ascertain the present *status* of the title by a simple inspection of the records. Nor is the clerk required, upon a call for a search by such a description, to certify that he can find no deeds on record conveying the premises described, for the premises may be embraced in the general description in some deed on record, and he is under no obligation to employ a surveyor, or to make inquiries or examinations outside of his office, to ascertain facts which do not appear distinctly by the records. He may decline to make such a search until he is furnished with the information that will enable him to find and identify the premises by his records."

It is no part of the duty of the defendant herein to consider, and give an opinion upon, the character and effect of any judgment, proceeding in attachment, claim under Mechanics' Lien law, or other such record found in his office. He can be called upon to do no more than to furnish copies of such records or *quasi* records. His work is merely mechanical, and does not involve either learning or judgment. These latter are required in order to determine the *status* of the title to lands, and the business of so applying them is not in competition with the official business of the defendant.

I have been referred by counsel to numerous cases decided by the courts of other states bearing more or less upon the question here involved, but depending, of course, upon the various statutory regulations of those states. I have not found it necessary to examine them, because I have found the question to be covered in this state by *Lum* v. *McCarty*.

I will advise an order that an injunction do issue.